UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

    Plaintiff,

v.

VERONICA FORTUNE,

    Defendant.

Civil Action No. TDC-22-1169

## MEMORANDUM OPINION

The United States of America ("the Government") previously filed a civil Complaint against Defendant Veronica Fortune in which it seeks a permanent injunction pursuant to 26 U.S.C. § 7407 and 26 U.S.C. § 7402(a) to bar Fortune from preparing, filing, or assisting in the preparation or filing of any federal income tax return. Pending before the Court is the Government's Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b). Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

## BACKGROUND

Veronica Fortune has regularly acted as a tax preparer within the meaning of 26 U.S.C. § 7701(a)(36), including by preparing tax returns and claims for tax refunds for clients in and near Prince George's County, Maryland. Since 2011, the Internal Revenue Service ("IRS") has assessed multiple penalties against her for violations of the Internal Revenue Code, and Fortune has an outstanding balance of unpaid penalties totaling over $240,000.

In March 2021, based on her conduct as a tax preparer, Fortune was charged with one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and two counts of aiding and assisting in the preparation and filing of false tax returns, in violation of 26 U.S.C. § 7206(2). In November 2020, Fortune signed a plea agreement that included a provision in which she committed that from the date of the plea agreement to the date of sentencing, she would not participate in the business of preparing and filing tax returns except her own. According to the Government, Fortune nevertheless "participated in preparing over 100 tax returns" during that time period. Compl. ¶ 16, ECF No. 1. In April 2021, Fortune pleaded guilty pursuant to the plea agreement, and in September 2021, she was sentenced to a term of imprisonment of 12 months and one day, to be followed by three years of supervised release.

On May 16, 2022, the Government filed the present civil Complaint in which it seeks a permanent injunction pursuant to 26 U.S.C. § 7407 and 26 U.S.C. § 7402(a) to bar Fortune from engaging as a tax preparer. The Government is authorized to bring a civil action "to enjoin any person who is a tax return preparer from further engaging in" certain conduct, including preparing a tax return with an understatement of liability based on an unreasonable position and engaging in conduct that violates the criminal provisions of the Internal Revenue Code. 26 U.S.C. § 7407(a), (b) (2018) (citing 26 U.S.C. §§ 6694–6695). According to the Government, such relief is necessary to prevent Fortune from continuing to interfere with the administration of federal tax laws because it is "nearly certain" that Fortune will continue preparing and filing fraudulent tax returns because she was not deterred by the express terms of her plea agreement and previous penalties. Compl. ¶ 50.

After Fortune failed to file a timely Answer to the Complaint, the Government filed a Motion for a Clerk's Entry of Default against Fortune on January 19, 2023. Default against Fortune was entered on February 6, 2023.

On March 8, 2023, Fortune filed a Motion to Dismiss. Also construing her filing as a Motion to Vacate the Clerk's Entry of Default, which was separately granted, the Court denied Fortune's Motion to Dismiss on the merits on November 16, 2023.

On January 8, 2024, the Government filed a second Motion for a Clerk's Entry of Default. On February 5, 2024, the Court granted the Motion in part and directed Fortune to file an Answer and show cause for the late filing within 14 days. After Fortune failed to file a timely Answer, default was entered against Fortune for the second time on February 27, 2024. After Fortune failed to take any further action relating to this case, the Government filed the present Motion for Default Judgment on May 28, 2024.

## DISCUSSION

In the Motion for Default Judgment, the Government seeks a default judgment in this case and requests that the Court permanently enjoin Fortune from preparing tax returns on the behalf of other persons or entities.

### I. Legal Standard

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After a default has been entered by the clerk, the court may, upon the plaintiff's application and notice to the defaulting party, enter a default judgment. Fed. R. Civ. P. 55(b)(2). A defendant's default does not, however, automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court.

*United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("[T]rial judges are vested with discretion, which must be liberally exercised, in entering [default] judgments and in providing relief therefrom."); *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002). The United States Court of Appeals for the Fourth Circuit has a "strong policy that cases be decided on their merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), but default judgment may be appropriate "when the adversary process has been halted because of an essentially unresponsive party," *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005); *see H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970) ("[T]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.").

In reviewing a Motion for Default Judgment, the court accepts as true the well-pleaded factual allegations in the complaint relating to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780–81 (4th Cir. 2001). However, it remains for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action. *Id.*; *see also* 10A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2688.1 (4th ed. 2023) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability."). If liability is established, the court must then determine the appropriate amount of damages or other remedy. *See Ryan*, 253 F.3d at 780-81.

## II.   Permanent Injunction

In Count I of the Complaint, the Government seeks injunctive relief under 26 U.S.C. § 7407, which authorizes a federal district court to enjoin a tax preparer from further acting as a tax

4

preparer "[i]f the court finds that a tax return preparer has continually or repeatedly engaged" in certain specified conduct that violates or interferes with tax laws and if an "injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration" of the Internal Revenue Code. 26 U.S.C. 7407(b). In Count II of the Complaint, the Government seeks an injunction pursuant to 26 U.S.C. § 7402(a), which authorizes a district court to issue "writs and orders of injunction . . . as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a).

In order to obtain an injunction barring certain conduct pursuant to 26 U.S.C. § 7407, the Government must establish three elements: (1) the defendant must be a tax preparer; (2) the conduct alleged must fall within one of the four categories proscribed by § 7407(b)(1)(A)-(D); and (3) the court must find that an injunction is appropriate to prevent recurrence of the proscribed conduct. 26 U.S.C. § 7407; *see United States v. Gbotcho*, No. DKC-15-0296, 2015 WL 1919688, at *4 (D. Md. Apr. 27, 2015). For an injunction barring an individual from acting as a tax preparer, the Government must also show that an "injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration" of the Internal Revenue Code. 26 U.S.C. 7407(b). The categories of prohibited conduct that may warrant an injunction include when a tax preparer has:

(A) engaged in any conduct subject to penalty under section 6694 or 6695, or subject to any criminal penalty provided by this title,

(B) misrepresented his eligibility to practice before the Internal Revenue Service, or otherwise misrepresented his experience or education as a tax return preparer,

(C) guaranteed the payment of any tax refund or the allowance of any tax credit, or

5

      (D)      engaged in any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws[.]

26 U.S.C. § 7407(b)(1).

A permanent injunction under 26 U.S.C. § 7402 may be granted "as may be necessary or appropriate for the enforcement of the internal revenue laws . . . in addition to and not exclusive of any and all other remedies." 26 U.S.C. § 7402(a). The statute affords courts broad authority in enjoining conduct. *See United States v. Ernst & Whinney*, 735 F.2d 1296, 1300 (11th Cir. 1984) (holding that "there need not be a showing that a party has violated a particular Internal Revenue Code section in order for an injunction to issue" under § 7402(a)).

Here, the Government alleges that Fortune engaged in conduct proscribed by 26 U.S.C. §§ 6694 and 6695, as well as the Internal Revenue Code's criminal provisions. Section 6694(a) imposes penalties on a tax preparer who prepares a tax return that contains an understatement of the taxpayer's liability due to an unreasonable position known to the tax preparer. 26 U.S.C. § 6694(a). Section 6694(b) imposes penalties on tax preparers who prepare a return containing an understatement that is due to the tax preparer's willful attempt to understate the liability or a reckless or intentional disregard of rules or regulations. 26 U.S.C. § 6694(b). Section 6695 imposes liability on a tax preparer for certain conduct when preparing tax returns for other persons, such as a failure to furnish a copy of a return to a taxpayer, a failure to sign a return, or a failure to furnish a valid identifying number. 26 U.S.C. § 6695.

The Government's unchallenged factual allegations are sufficient to establish that Fortune was a tax preparer who engaged in conduct prohibited by § 6694, § 6695, and the Internal Revenue Code's criminal provisions, thus satisfying the first two requirements for a permanent injunction under § 7407. First, as detailed in the Complaint, dating back to 2011, Fortune has incurred penalties under § 6694 for violations spanning multiple tax years. As to § 6694(a), Fortune has

6

fraudulently offset her clients' high W-2 wages and decreased her clients' overall tax liabilities. For example, for one client, Fortune included the full amount of the taxpayer's mortgage interest deduction on his Schedule C, despite the taxpayer's in-home office representing approximately two percent of his home's square footage. Fortune has prepared and filed multiple tax returns claiming Schedule C losses for businesses no longer in operation, including one return in 2019 that reported a nearly $30,000 loss for a store that had closed the previous year. Fortune has also incurred multiple penalties under § 6694(b) and has an outstanding balance of unpaid penalties totaling over $240,000. As to § 6695, Fortune has failed to furnish a valid tax preparer's identifying number ("EFIN"), as she improperly used a third party's EFIN to file tax returns after her EFIN was terminated in 2017. Most importantly, as to the Internal Revenue Code's criminal provisions, in April 2021, Fortune pleaded guilty to one count of conspiracy to defraud the United States under 18 U.S.C. § 371 and two counts of aiding and assisting in the preparation of false tax returns and other documents under 26 U.S.C. § 7206(2). Thus, the first two requirements are satisfied.

As for the requirements that "injunctive relief is appropriate to prevent the recurrence of such conduct" and that "an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration" of the Internal Revenue Code, 26 U.S.C. 7407(b), courts "assess the totality of the circumstances," including the following factors: (1) the gravity of harm caused by the offense; (2) the extent of the defendant's participation and degree of scienter; (3) the isolated or recurrent nature of the infraction and the likelihood that the defendant's customary business practices might again involve such transactions; (4) the defendant's own recognition of culpability; and (5) the sincerity of the defendant's assertions against future violations. *United States v. Kaun*, 827 F.3d 1144, 1149-50 (7th Cir. 1987); *Abdo v.*

*Internal Revenue Serv.*, 234 F. Supp. 2d 553, 564-65 (M.D.N.C. 2002), *aff'd*, 63 F. App'x 163 (4th Cir. 2003). These same considerations apply to whether an injunction under § 7402 is appropriate. *See Abdo*, 234 F. Supp. 2d at 566-67.

Here, the totality of the circumstances weigh in favor of a permanent injunction to prevent recurrence. On first factor, Fortune's clients were harmed because their prepared returns substantially understated their actual tax liabilities. As the Government asserts, Fortune's clients may now face income tax deficiencies and will be liable for accrued penalties and interest. The Government was also harmed by the loss of tax revenue from the inaccurate and fraudulent returns, the negative impact on public confidence in the fairness of the federal tax system, and the diversion of IRS resources to the investigation and prevention of Fortune's conduct. *Cf. United States v. Reliable Limousine Servs., L.L.C., et al.*, No. JFM-11-3383, 2012 WL 957620, at *3 (D. Md. Feb. 8, 2012) (noting that "[t]he efficacy of the federal tax system relies on employers to voluntarily file correct tax returns and pay the taxes due" and that "the [d]efendants' failure to do so undermines this system and gives them an unfair advantage over the competitors who comply with the law").

As for the second and fourth factors, the facts described above demonstrate that Fortune has engaged in repeated violations dating back to 2011 and has been found guilty of criminal violations, which demonstrate that she has engaged in violations with criminal intent and she is aware of her culpability. As for the third and fifth factors, there is a high likelihood that the defendant's activities would involve additional violations, and there are significant concerns about the sincerity of any assertions that she will not engage in additional violations, because of her continuous pattern of violating federal tax laws even after she was sanctioned by authorities. When Fortune's EFIN was terminated in 2017 because she had repeatedly filed fraudulent tax returns,

she obtained a false EFIN to file fraudulent reports in 2018 and 2019. Not only has Fortune failed to pay the outstanding penalties she was assessed under § 6694(b), but even after she was prosecuted for criminal violations associated with her work as a tax preparer, and even after she signed a plea agreement committing to stop acting as a tax preparer, she then participated in the preparation of numerous additional tax returns. Thus, an analysis of the totality of the circumstances demonstrates that an injunction "is appropriate to prevent the recurrence" of the proscribed conduct and that an injunction against acting as a tax preparer is warranted because an "injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration" of the Internal Revenue Code. 28 U.S.C. 7407(b). The same analysis supports entry of a permanent injunction under § 7402(a).

### III. Equitable Factors

As a separate matter, the Court agrees with the Government that because it seeks an injunction that is expressly authorized as a remedy pursuant to a federal statute, the traditional equitable requirements for the issuance of a permanent injunction need not be addressed. *See Burlington N. R.R. Co. v. Dep't of Revenue*, 934, F.2d 1064, 1074 (9th Cir. 1991) (stating that the "standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief"); *Abdo*, 234 F. Supp. 2d at 564.

Even if such factors had to be considered, they are satisfied. Generally, under "well-established principles of equity," a plaintiff seeking a permanent injunction must demonstrate that (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be

disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Considering the first factor, the Government has suffered an irreparable injury as a result of Fortune's tax practices because the Government is unlikely to be able to recover the unpaid taxes and penalties resulting from the fraudulent tax returns, its resources to ensure the proper administration of the tax laws were depleted in a manner that prevented investigation of other alleged violations, and Fortune's activities have undermined the integrity of the tax system.

Second, legal remedies are inadequate to compensate for the injury. The IRS has already assessed penalties against Fortune, which she has not repaid. Moreover, Fortune continued to prepare and file false tax returns after receiving numerous civil penalties. Fortune continued to file tax returns after her EFIN was canceled by the IRS in 2017, and she filed tax returns after pleading guilty in 2021 to conspiracy to defraud the United States and aiding and assisting in the preparation and filing of a false and fraudulent return, thus showing that she has not been sufficiently deterred from future proscribed conduct.

Third, the balancing of hardships weigh in the Government's favor. The Government primarily asserts hardships in allocating resources to investigate and stop Fortune's conduct. *See United States v. Preiss*, No. 1:07CV00589, 2008 WL 2413895, at *10 (M.D.N.C. June 11, 2008) (noting that this factor weighs in favor of an injunction against a tax preparer because the government is unlikely to collect the lost revenue from the taxpayers, "because of the number of filers, lapse of time and socioeconomic status of the customers"). By contrast, while an injunction against Fortune barring her from preparing tax returns may have an impact on her income, she is not precluded from other means of employment that would not lead to further violations of federal tax laws. Finally, the public interest favors an injunction because Fortune's conduct undermines

the administration of the federal tax system, legitimate tax preparers who were deprived of potential clients, and public confidence in the federal tax system. Thus, even if analysis of traditional equitable factors is necessary, those factors weigh in favor of the granting of a permanent injunction under § 7407 and § 7402(a).

## IV.   Scope of the Injunction

The Government requests that Fortune be "permanently enjoined from acting as a tax return preparer in any capacity." Compl. ¶ 65. As justification, the Government argues that based on Fortune's continued violations of federal tax law, a narrower injunction would be insufficient to prevent her from continuing this conduct. Further, the Government requests, pursuant to 26 U.S.C. 7402, post-judgment discovery to monitor Fortune's compliance with this injunction under 26 U.S.C. § 7402(a). While § 7402 does not expressly authorize this remedy, it states that "[t]he district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction . . . and such other orders and processes, and to render such judgment and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a).

Post-judgment discovery is not always warranted. *See Gbotcho*, 2015 WL 1919688, at *8, (denying post-judgment discovery when the Government did not explain why it was necessary or provide other authority for ordering post-judgment discovery; *United States v. Zen Enters., Inc.*, No. DKC-19-3294, 2021 WL 3112931, at *6 (D. Md, July 22, 2021) (denying post-judgment discovery where the Government did not request such relief in the complaint or explain why it was required for the enforcement of § 7402). Here, however, the Government has asserted that even after facing civil sanctions, Fortune continued to file fraudulent tax returns, and even after a criminal conviction, she continued to file tax returns in violation of the terms of her plea agreement.

11

Under these particularly problematic circumstances under which violations of the injunction are more likely than in the ordinary case, the Court will grant post-judgment discovery in order to facilitate enforcement of and compliance with the injunction.

## CONCLUSION

For the foregoing reasons, the Government's Motion for Default Judgment will be GRANTED. A separate Order shall issue.

Date: July 10, 2024

THEODORE D. CHUANG
United States District Judge